UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALBERTA RICHARDSON,                )   NO. EDCV 06-00549 MAN
                                   )
            Plaintiff,             )
                                   )   MEMORANDUM OPINION
      v.                           )
                                   )   AND ORDER
MICHAEL J. ASTRUE,[1]              )
Commissioner of the                )
Social Security Administration,    )
                                   )
            Defendant.             )
_____)

     Plaintiff filed a Complaint on May 31, 2006, seeking review of the
denial by the Social Security Commissioner ("Commissioner") of
Plaintiff's claim for supplemental security income ("SSI").  On June 19,
2006, the parties consented to proceed before the undersigned United
States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties
filed a Joint Stipulation on March 19, 2007, in which:  Plaintiff seeks
an order reversing the Commissioner's decision and awarding benefits or,
in the alternative, remanding the matter for further administrative

_____

     [1]   Michael J. Astrue became the Commissioner of the Social
Security Administration on February 12, 2007, and is substituted in
place of former Commissioner Joanne B. Barnhart as the Defendant in this
action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
Security Act, last sentence, 42 U.S.C. § 405(g).)

proceedings; and Defendant seeks an order affirming the Commissioner's decision.   The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for SSI on June 3, 1992. (Administrative Record ("A.R.") 104-07.)  In her application, Plaintiff claimed to have been disabled since that date, due to a mental impairment and back and neck pain.  (A.R. 104, 409.)  She has past relevant work experience as a loan audit clerk and motel clerk.  (A.R. 410.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.   On April 11, 1995, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge David Ganly ("ALJ").   (A.R. 23-69.)   In an October 27, 1995 decision, the ALJ found that Plaintiff was not disabled.  (A.R. 10-15.) Plaintiff sought review of that decision in this Court (Case No. EDCV 97-167-MAN), and on March 1, 1999, the Court remanded the case for further administrative proceedings (the "1999 Order").  (A.R. 418-27.)

On February 4, 2002, Plaintiff, who was represented by counsel, again testified at a hearing before the ALJ.  (A.R. 442-501.)   In an April 3, 2002 decision, the ALJ again denied Plaintiff's request for benefits.  (A.R. 409-15.)  Plaintiff sought review of that decision in this Court (Case No. EDCV 02-807-MAN), and on April 13, 2004, the Court remanded the case for further administrative proceedings (the "2004

2

Order").  (A.R. 1561-83.)


     On September 8, 2005, Plaintiff, who was represented by counsel, testified at another hearing before the ALJ.  (A.R. 1830-88.)  In a March 30, 2006 decision, the ALJ found that Plaintiff was not disabled. (A.R. 1523-58.)


**SUMMARY OF ADMINISTRATIVE DECISION**


     In his March 30, 2006 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 3, 1992, her alleged onset date, and she met the disability insured status requirements on that date and continued to meet them through March 31, 1993.  (A.R. 1556.)  The ALJ further found that Plaintiff has "severe" impairments, consisting of:  degenerative disk disease and a herniated disk of the cervical spine; degenerative disk disease of the lumbar spine; bilateral carpal tunnel syndrome; right knee arthritis; asthma; hypertension;  obesity;  a  chronic  reactive  affective  disorder;  a depressive disorder, not otherwise specified; a psychophysiological reaction to pain; and a personality disorder, not otherwise specified. (*Id.*)  The ALJ further found that Plaintiff does not have an impairment which meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)  In addition, the ALJ found that "[Plaintiff's] multiple subjective complaints, including her alleged functional limitations, are credible only to the extent that they limit [Plaintiff] to the residual functional capacity [found in this decision]."  (*Id.*)

3

The ALJ found that, as of her alleged onset date, Plaintiff was a "younger person," and at the time of the decision, was "closely approaching advanced age" pursuant to 20 C.F.R. §§ 404.1563 and 416.963. (A.R. 1557.)  He further found that she has a general education diploma pursuant to 20 C.F.R. §§ 404.1564(b) and 416.964(b), and has no transferable skills.  (*Id.*)

In setting forth Plaintiff's physical residual functional capacity, the ALJ found:

> [Plaintiff] has the physical residual functional capacity to perform basic work-related activities consisting of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently due to spine and knee problems, and obesity.  She can stand or walk 4 hours out of an 8-hour work day due to lumbar spine [problems], [leg problems], and obesity.  She can sit for 6 hours out of an 8-hour work day because of lumbar spine [problems].  Pushing and pulling are consistent with [Plaintiff's] lifting limitations.  [Plaintiff] requires one to three minutes every hour to change positions, based on lumbar spine, cervical spine, and neck problems.  [Plaintiff] cannot climb ladders, ropes, or scaffolding due to her hand and neck problems.  She cannot maintain a fixed position of her neck for more than one hour.  She can occasionally climb, balance, bend, stoop, kneel, crouch, and crawl due to lumbar spine [problems].  She can occasionally move her neck.  She should avoid concentrated exposure to all fumes, odors, dusts, toxins, gases, and poor ventilation because of asthma.  She

4

should avoid all hazardous or fast machinery due to problems with concentration as demonstrated by her restrictions in activities of daily living.  She should avoid all unprotected heights due to her back and leg problems.  She cannot perform power gripping, torquing, or twisting with the bilateral hands due to carpal tunnel syndrome.  She can [occasionally] flex and extend her wrists bilaterally because of carpal tunnel syndrome.  She can occasionally use foot controls with the right leg due to leg problems.

(A.R. 1556-57.)[2]

With respect to Plaintiff's mental residual functional capacity, the ALJ found:

Prior to June 2004, [Plaintiff's] mental impairment did not preclude work involving safety operations and work around hazardous and fast moving machinery.

Beginning with June 2004 and continuing through the date of this decision, [Plaintiff] has been limited to 4-5 step simple repetitive tasks in a relatively habituated work setting, requiring no safety operations or hypervigilance due to problems with concentration and persistence, and as demonstrated by difficulties with activities of daily living.

[2]   This residual functional capacity is consistent with the requirements for "light work," which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

1  She cannot have intense interpersonal contact with the public
2  due to social functioning problems.  She cannot perform high
3  production, high quota work or rapid assemblyline work due to
4  problems with concentration, persistence, and pace.

5

6  (A.R. 1557.)

7

8     The ALJ found that Plaintiff cannot perform her past relevant work.
9  (A.R. 1557.)  However, using Rules 202.14 and 202.21 as a framework and
10  relying upon the testimony of a vocational expert, the ALJ found that
11  Plaintiff could perform a significant number of jobs in the national
12  economy.[3]  (A.R. 1555-57.)  Accordingly, the ALJ found that Plaintiff was
13  not "disabled" within the meaning of the Social Security Act at any time
14  through the date of the decision.  (A.R. 1557.)

15

16                          **STANDARD OF REVIEW**

17

18     This Court reviews the Commissioner's decision to determine
19  whether it is free from legal error and supported by substantial
20  evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
21  Commissioner's decision must stand if it is supported by substantial
22  evidence and applies the appropriate legal standards.  Saelee v. Chater,
23  94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
24  mere scintilla but less than a preponderance -- it is such relevant

25

26          [3]    Rule 202.14 directs that a person who is an "individual
    closely approaching advanced age," is a "high school graduate or more,"
    and is "skilled" with skills not transferable is not disabled. Rule
27  202.21 directs that a person who is a "younger individual," is a "high
    school graduate or more," and is "skilled" with skills not transferable
28  is not disabled.  20 C.F.R. Pt. 220, App. 2.

1  evidence that a reasonable mind might accept as adequate to support the

2  conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

3

4      Although this Court cannot substitute its discretion for that of

5  the Commissioner, this Court nonetheless must review the record as a

6  whole, "weighing both the evidence that supports and the evidence that

7  detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of

8  Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also

9  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is

10 responsible for determining credibility, resolving conflicts in medical

11 testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d

12 1035, 1039-40 (9th Cir. 1995). This Court must uphold the

13 Commissioner's decision if it is supported by substantial evidence and

14 free from legal error, even when the record reasonably supports more

15 than one rational interpretation of the evidence. Id. at 1041; see also

16 Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

17 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

18

19                              **DISCUSSION**

20

21     Here, Plaintiff alleges two disputed issues. First, she contends

22 that the ALJ failed to consider properly the medical evidence provided

23 by both treating and consultative physicians. Second, she contends that

24 the ALJ failed to consider properly her claimed symptoms and

25 limitations. (Joint Stip. at 4-5.)

26

27

28

7

A.  **With Respect To The Period Through May 2004, The ALJ's Consideration Of The Evidence Was Proper And Consistent With The Governing Legal Standards; For The Period Beginning In June 2004, Remand Is Necessary For Further Development Of The Record**.

When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001)(citation omitted); Reddick, 157 F.3d at 725.  These same rules govern the ALJ's consideration of the opinions of examining physicians. Lester, 81 F.3d at 830-31.

The opinions of examining physicians and medical experts may constitute substantial evidence upon which an ALJ may rely in assessing a claimant's residual functional capacity when they are properly supported by the medical evidence. *See, e.g.,* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent

8

1  examination of claimant); Morgan, 169 F.3d at 600 (testifying medical
2  expert opinions may serve as substantial evidence when "they are
3  supported by other evidence in the records and are consistent with it").

5      Plaintiff contends that the ALJ failed "to properly consider and
6  assess the opinion[s] of multiple treating sources, including Dr.
7  Soleimani, Dr. Kikani, Dr. Shih, and Dr. Taylor, a consultative
8  examiner." (Joint Stip. at 6.)  Plaintiff further contends that the
9  ALJ's reasons for rejecting these opinions were neither specific nor
10 legitimate and, therefore, constitute error.  (Joint Stip. at 7.)
11 Finally, Plaintiff contends that the ALJ improperly rejected the opinion
12 of Dr. Joseph Malancharuvil, a medical expert, that Plaintiff's
13 condition met the requirements of Listing 12.04(C) since June 2004.
14 (Joint Stip. at 8, citing A.R. 1862.)

16     As detailed in the 2004 Order, the Court's primary concern with the
17 ALJ's prior decision was that it failed to address medical records from
18 Plaintiff's physicians regarding her physical impairments, and it did
19 not accurately and fairly state the medical evidence of record regarding
20 Plaintiff's claimed mental impairments.  (A.R. 1573.)  However, the
21 ALJ's consideration and summary of the medical evidence in his 36-page
22 March 30, 2006 decision (A.R. 1523-1558) is remarkably different from
23 the paltry four-page discussion of this evidence in the April 3, 2002
24 written decision.  (A.R. 410-414.)  For the reasons that follow, the
25 ALJ's decision is affirmed with respect to the conclusion that Plaintiff
26 was not disabled through May 2004, and reversed and remanded for further
27 development of the record regarding the nature and extent of Plaintiff's
28 disability in and following June 2004.

1.   **The ALJ's Physical Residual Functional Capacity Finding Is Affirmed**.

At the September 8, 2005 hearing, the ALJ questioned Dr. Sami Nafoosi, an internist who acted as a medical expert in this case, regarding Plaintiff's physical limitations. (A.R. 1841-42.) The ALJ rejected the opinions of Dr. Mehrzad Soleimani, the treating physician, because they were "contradicted by the medical evidence." (A.R. 1540.) Instead, the ALJ gave weight to the opinion of Dr. Nafoosi, the medical expert, "whose opinion is consistent with the evidence as a whole." (A.R. 1541.)

Despite Plaintiff's argument that the ALJ again failed to consider properly Dr. Soleimani's opinion, the ALJ was not required to accept Dr. Soleimani's opinion that Plaintiff could not work. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *see also* Batson v. Comm'r. of Soc. Sec., 359 F.3d 1190, 1194-95 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(a treating physician's opinion "[is not] necessarily conclusive as to . . . the ultimate issue of disability."). Moreover, the ALJ correctly observed that Dr. Soleimani's opinion was vague and conclusory; in his two-paragraph February 1, 2001 letter, although Dr. Soleimani noted that Plaintiff had "difficulty" with sitting still or standing "for a long period of time" and that it was "difficult" for her to ambulate, Dr. Soleimani never provided precise

limitations regarding how Plaintiff's physical impairments impacted her ability to function in the workplace. (A.R. 785.) *See* <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings).

In determining Plaintiff's physical residual functional capacity, the ALJ properly relied upon the opinion of the medical expert, Dr. Nafoosi, who reviewed the entire medical record in rendering his opinion as to Plaintiff's physical limitations. (A.R. 1838.) As such, the ALJ was entitled to rely upon it.[4] <u>Morgan</u>, 169 F.3d at 600.

In stark contrast to the April 3, 2002 written decision, the ALJ discussed at length Plaintiff's treating records regarding her physical impairments. Accordingly, the ALJ complied with the directions set forth in the 2004 Order regarding the consideration of evidence pertaining to Plaintiff's physical impairments, and his finding regarding Plaintiff's physical residual capacity is affirmed.

**2. The ALJ's Findings Regarding Plaintiff's Mental Residual Functional Capacity Are Affirmed, In Part, And Reversed, In Part.**

In a June 5, 2001 report, Dr. Divy Kikani, a psychiatrist who

---

[4] Indeed, the ALJ's physical residual functional capacity finding is slightly broader than the one Dr. Nafoosi assessed; although Dr. Nafoosi found that Plaintiff's upper extremity limitations existed only since January 2000 (A.R. 1842), the ALJ nevertheless included such limitations in his residual functional capacity finding for the entire period at issue.

examined Plaintiff at the request of the Commissioner, found that Plaintiff: had an unimpaired "[a]bility to remember, understand and carry out simple instructions"; "may have mild to moderate problems persisting at the normal work situation, under customary work pressure"; had "mild to moderate impairment in [her] ability to interact normally with co-workers, supervisors, and public"; and "may be expected to show mild to moderate episodes of emotional deterioration at the normal work situation, under customary work pressure." (A.R. 796.) In rendering his opinion, Dr. Kikani examined and interviewed Plaintiff and also reviewed her medical records, some of which he summarized in his report.[5] (A.R. 791-93.)

In a September 10, 2001 report, Dr. Clifford Taylor found that Plaintiff: had "mild" impairment in her ability to understand, remember, and carry out simple job instructions; had "mild impairment in her ability to maintain attention, concentration, persistence, and pace; had a "fair" ability to relate and interact with supervisors, coworkers and the public; and had "mild" impairment in her ability to adapt to day-to-day work activities, including attendance and safety. (A.R. 821.) Dr. Taylor based his opinion on his testing and examination he performed on Plaintiff, which the ALJ correctly described. (A.R. 812-22.)

In the 2004 Order, the Court noted that the curt summary of Dr.

_____

[5]    Dr. Kikani noted: "[t]he information for the present psychiatric evaluation was obtained from the patient and from the available information suppled in the DPSS records." (A.R. 791.) In a two-page summary, Dr. Kikani also summarized the content of the records he reviewed. (A.R. 792-93.)

Taylor's findings in the ALJ's April 3, 2002 decision simply indicated that Plaintiff had "no" severe mental impairment or limitations due to her "over-reporting". The ALJ's March 30, 2006 decision corrected this error, however. Significantly, in the March 30, 2006 decision, the ALJ found that Plaintiff had a "severe" mental impairment and attendant limitations based on a detailed and thorough discussion of the evidence. This evidence included Dr. Taylor's opinions, which the ALJ addressed, stating:

> The most rational assumption one can deduce from Dr. Taylor's full diagnoses, opinions, description, and comments is yes, he believed [Plaintiff] to have a significant adjustment disorder covered by the 12.04 series; the mood disorder had improved; [Plaintiff] had exaggerated her complaints; she did not cooperate during the examination; and she was a malingerer. When taken together with other treating caregivers' assessment of malingering and secondary gain (see Credibility, below), to find otherwise would defy common sense.

(A.R. 1540, 1547-49.)

At the September 8, 2005 hearing, Dr. Joseph Malancharuvil, a psychologist who served as a medical expert, testified that, based on his review of the medical records and following his brief additional questioning of Plaintiff (A.R. 1853-56), Plaintiff had the following

13

limitations from August 1994,[6] to June 2004:  "mild" restrictions in daily living; "mild" limitations in social functioning; "moderate" limitations in persistence or pace; an ability to complete up to four to five step instructions; a restriction from operating hazardous machinery or fast-moving machinery; no fast-paced, out of the way work. (A.R. 1859-60.)

In discussing the opinion of the medical expert, the ALJ stated: "Based on [Plaintiff's] testimony and without any clinical evidence of deterioration, however, Dr. Malancharuvil opined [Plaintiff] 'may' equal the 12.04C criteria since June 2004.  He stated this opinion was based on his impressions without clinical correlation as well as his assessment of her testimony she has gotten progressively worse over the last ten years. . . ."  (A.R. 1550.)   The ALJ rejected Dr. Malancharuvil's testimony based on his equivocal language, and the fact that Plaintiff's worsening condition as described by Dr. Malancharuvil was not supported by the medical records or clinical evidence.  (*Id.*) *See* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also* Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(holding that the ALJ properly rejected a treating psychologist's opinion that was based on the claimant's subjective complaints and on information submitted by family, friends, and a former counselor, rather than on "clinical evidence").

---

[6]   Although the ALJ noted that this opinion covered the period from 1992 to June 2004, the transcript shows that Dr. Malanchavuril defined the period as from August 1994, to June 2004.  (A.R. 1859.)

Neither Dr. Taylor nor Dr. Kikani found that limitations in Plaintiff's mental abilities prohibit her from functioning in the workplace. As both the reports of Dr. Taylor and Dr. Kikani are based on a review of records and/or psychological testing, as well as an examination and interview of Plaintiff, they constitute substantial evidence. <u>Tonapetyan</u>, 242 F.3d at 1149. In addition, they are generally consistent with the testimony of Dr. Malancharuvil, who reviewed the medical record in opining as to Plaintiff's mental residual functional capacity, for the period from August 1994, to June 2004. However, the testimony of Dr. Malancharuvil indicates that he found slightly more restrictive limitations than the ALJ found for the period from June 3, 1992, to June 2004. Specifically, Dr. Malancharuvil found that Plaintiff had "moderate" limitations in concentration, persistence, or pace for the period from August 1994, to June 2004. (A.R. 1859.) Even with these more restrictive limitations, however, Dr. Malancharuvil concluded that Plaintiff could have worked during the August 1994 to June 2004 period. (*Id.*)

To the extent that the ALJ resolved the differences among these opinions in only finding limitations in Plaintiff's ability to function in work environments involving fast-moving or hazardous machinery for the time period from June 3, 1992, through May 2004, he did so appropriately. <u>Batson</u>, 359 F.3d at 1195 (when there are conflicting medical opinions, the ALJ must resolve the conflict); <u>Thomas</u>, 278 F.3d at 956 (same); <u>Matney</u>, 981 F.2d at 1019 (9th Cir. 1992)(same). Furthermore, the ALJ adequately explained his reasons for including the safety limitations as a measure that took into consideration the impact, if any, of Plaintiff's reported symptoms of hearing voices.

15

Dr. Malancharuvil's September 8, 2005, testimony took into account the entirety of Plaintiff's medical records, as well as Dr. Malancharuvil's brief questioning of Plaintiff on that date.  Although there is no clinical evidence to support his opinion that Plaintiff "may" equal the 12.04C criteria since June 2004, there is likewise no evidence in the record to refute it.  Dr. Malancharuvil's suggestion that Plaintiff's condition may have worsened to a totally disabling extent raises a question that requires further development of the record.  In cases where the claimant's condition is progressively deteriorating, the most recent medical records are the most probative. Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)(holding that earlier medical evaluations do not constitute substantial evidence to reject treating physician's opinion, when condition is degenerative); Magallanes, 881 F.2d at 745-55 ("where claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports").  Although the Court is loath to remand this decision a third time, the record should include a proper evidentiary foundation for either accepting or rejecting Dr. Malancharuvil's opinion that Plaintiff's mental health has deteriorated to a disabling extent.  It is therefore critical that the record be developed and the evidentiary gap filled.

Accordingly, the ALJ's decision is remanded for the limited purpose of developing the record to address the question raised by Dr. Malancharuvil, namely, of whether Plaintiff's condition was deteriorated sufficiently in and since June 2004, to equal a listing.

///

///

16

**B.** **The ALJ's Finding Regarding The Credibility Of Plaintiff's Claimed Symptoms And Limitations Is Affirmed.**

Plaintiff contends that the ALJ has failed to consider properly Plaintiff's subjective symptoms and limitations in accordance with the governing standards. (Joint Stip. at 15.) Plaintiff further relies upon the 2004 Order, in which the Court noted that the ALJ's prior decision failed to provide clear and convincing reasons for rejecting Plaintiff's claimed symptoms and limitations. (*Id.*)

The Court will give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Oreteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible. *See* Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979); *see also* Lester, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

17

In the 2004 Order, the Court noted that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's claimed symptoms and limitations.  (A.R. 1580-81.)   In his recent decision, the ALJ clearly expanded upon the less than one-paragraph credibility finding in the previous decision (A.R. 413) in rendering his multi-page credibility finding.  (A.R. 1555-55.)   Among his many reasons for rejecting the credibility of Plaintiff's claimed limitations and symptoms, he cited Plaintiff's inconsistent statements, allegations, and testimony that undermined her allegations regarding her physical and mental limitations.  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)(ALJ may reject a claimant's testimony upon:  "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"); see also Light, 119 F.3d at 792 (internal conflicts in claimant's statements are a proper basis for discrediting allegations regarding limitations).

Specifically, the ALJ noted that, despite Plaintiff's claims of increasing debilitating pain and depression since her alleged onset date, she testified at the September 8, 2005 hearing that she cared for three young children for seven months in 2003, and cared for her daughter's infant while her daughter was incarcerated in 1998.  (A.R. 1869-71.)  See also Rollins v. Masssanari, 261 F.3d 853, 857 (9th Cir. 2001)(ALJ properly rejected the claimant's alleged disabling pain based on her testimony that she single-handedly cared for two young children and her household while her husband worked long hours six days a week). In addition, as the ALJ noted, Plaintiff has made inconsistent statements regarding how active she is and, in fact, reported in 1996 that she had been walking a mile three to four times a week.  (A.R. 1093

-- September 3, 1996 treating record noting that "[Plaintiff] has been walking just over a mile and back approximately three to four days a week.") *See also* <u>Matthews v. Shalala</u>, 10 F.3d 678, 679-80 (9th Cir. 1993)(the ALJ properly rejected the claimant's allegation that his back pain was disabling, when claimant performed housecleaning and gardening, attended school, and only occasionally took pain medication); <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

In addition, the ALJ cited Plaintiff's failure to comply with her prescribed treatment and medications.[7]   20 C.F.R. § 416.930(b) (providing that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"); <u>Choate v. Barnhart</u>, 457 F.3d 865, 872 (8th Cir. 2006)(ALJ properly rejected the claimant's allegations of disabling symptoms based on his failure to comply with his treating physician's directions); *see also* <u>Smolen</u>, 80 F.3d at 1284 (ALJ may consider a claimant's compliance with her prescribed treatment in assessing the severity of a claimant's symptoms).

---

[7]   (*See* A.R. 1795 -- September 5, 2002 progress record noting that Plaintiff was advised to stop smoking but continued to do so; 1792 -- January 23, 2003 progress record indicating that Plaintiff was non-compliant with her pain medication; 1768 -- April 26, 2003 progress record noting that Plaintiff was advised to lose weight; 1769 -- April 26, 2003 progress record indicating that Plaintiff had increased her smoking; 1800 -- March 18, 2002 progress record indicating that Plaintiff was encouraged to stop smoking completely and recommended to follow up with smoking cessation classes; 1801 -- March 13, 2002 progress record indicating that she was scheduled for a smoking cessation class.)

19

Accordingly, the ALJ's finding regarding the credibility of Plaintiff's claimed limitations and symptoms is affirmed.

**C.   Remand Is Required.**

Having found the ALJ's decision deficient for the reasons noted above, the Court must decide whether to award benefits or remand for further proceedings. Where, as in this case, the record needs to be clarified, remand is appropriate to allow the ALJ the opportunity to remedy those inadequacies and errors. *See* Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED with respect to the period through May 2004, and REVERSED and REMANDED for further development of the record regarding the nature and extent of Plaintiff's disability in and following June 2004, and any further proceedings consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///

20

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 28, 2008


                                    /s/
                        MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE

21